**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUZANNE LO GUIDICE, | |
| **Plaintiff,** | Civil Action No.: 25-15304 (ES) (JBC) |
| **v.** | **OPINION** |
| HYATT CORPORATION and AM RESORTS, LLC, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Hyatt Corporation ("Hyatt") and AMResorts L.P.'s ("AMResorts" or "AMR") (Hyatt and AMResorts are, collectively, "Defendants") motion to dismiss Plaintiff Suzanne Lo Guidice's Amended Complaint. (D.E. No. 14 ("Motion"); D.E. No. 14-3 ("Mov. Br.")). The Court has carefully considered the parties' submissions, as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff began working for Defendant AMResorts in or around March 2013 as "Regional Director of Groups – Northeast." (D.E. No. 12 ("Am. Compl.") ¶¶ 5–6). AMResorts offered Plaintiff that position in a letter dated February 22, 2013, which set forth the "terms and conditions of [that] employment offer[.]" (*Id.* ¶ 8 & Ex. A). That letter indicated, among other things, that she would receive a base salary, would "be eligible for 2% commission[,]" "may be eligible for a potential salary increase once a year[,]" and would "be eligible to participate in [AMResort's]

employee benefit programs" after she had been employed for 30 days.  (*Id.* at Ex. A ("Offer Letter")).  The letter further provided:  "To accept this offer, please sign on the acceptance line below and return on your first day."  (*Id.*).  Plaintiff signed the letter next to the "Accepted by:" notation on or about February 22, 2013.  (*Id.*).

Throughout her employment with AMResorts and, ultimately, Hyatt,[1] Plaintiff's "job has been to contract group business for corporate groups in the North East United States and Canada for what is currently known as Hyatt's Inclusive Collection[.]"  (*Id.* ¶ 11).  In that role, Plaintiff "often booked programs for [AMResorts] and Hyatt that were scheduled months or years in advance."  (*Id.* ¶ 13).

"For more than a decade, [AMResorts] paid [Plaintiff] a commission equal to 2% of the gross amount of every booking she made, with the commission payable to her after the program she booked actualized and the customer paid [AMResorts]."  (Am. Compl.  ¶ 12).  Indeed, from February 2013 until at least November 2021, AMResorts "paid some or all of its sales employees" this way, even if the program underlying the commission "did not take place until after the sales employee stopped working for [AMResorts]."  (*Id.* ¶¶ 14–15).  After acquiring AMResorts, Hyatt continued to pay Plaintiff in the same fashion through approximately June 30, 2024.  (*Id.* ¶ 16).

Hyatt purported to revise the payment arrangement on or about May 7, 2024:

> Hyatt advised [Plaintiff] that, although it would pay her commissions on bookings she made through June 30, 2024 if the customer paid Hyatt prior to December 31, 2024, it was not going to pay her any such commissions after December 31, 2024, meaning it would not pay her any commission on bookings she made prior to July 1, 2024 for which the customer paid Hyatt after December 31, 2024.

---

[1]    Hyatt acquired AMResorts in or about November 2021.  (*Id.* ¶ 9).

(*Id.* ¶ 17).  During a Microsoft Teams call on June 11, 2024, Hyatt's Vice President of Sales advised that Hyatt would not pay members of Plaintiff's team "any commissions after December 31, 2024, irrespective of when the sale had been booked."  (*Id.* ¶ 18).  Hyatt's Vice President of Sales further advised "that any groups booked on or before July 1, 2024[,] would be subject to the then current commission plan."  (*Id.* ¶ 19).

Plaintiff alleges that, while Hyatt asked her to sign its new compensation plan, she refused to do so.  (*Id.* ¶¶ 20, 22).  By letter to Hyatt dated August 7, 2025, Plaintiff's counsel explained the rationale for that refusal: Plaintiff believed that Hyatt's attempts to retroactively eliminate commissions for existing bookings violated both contract law and the New Jersey Wage Payment Law ("NJWPL").  (*Id.* ¶¶ 20–21).  Plaintiff's counsel clarified, however:

> [Plaintiff] accepts that the [new compensation plan] will apply to any sales she books after June 30, 2024, and intends to continue working for Hyatt pursuant to the [new compensation plan] going forward. However, she objects to Hyatt applying the [new compensation plan] to the bookings she made before July 1, 2024, or imposing a new requirement that she must remain employed by it when her commissions become payable.

(*Id.* ¶ 21).

Plaintiff alleges that she booked numerous sales for Defendants prior to July 1, 2024, that "actualized" (i.e., the customer paid Hyatt) after December 31, 2024.  (*Id.* ¶ 23).  Specifically, "[b]etween January 1, 2025 and approximately May 11, 2025, the bookings that [Plaintiff] made for Hyatt prior to July 1, 2024 brought in a total of approximately $9,967,369.55 in actualized revenue to Hyatt."  (*Id.* ¶ 27).  Under the compensation plan in place at the time Plaintiff made those bookings, Plaintiff would be entitled to a 2% commission of approximately $199,347.49.  (*Id.* ¶ 28).  "In addition, [Plaintiff] project[ed] she has or will earn additional commissions totaling approximately $52,409 from booking she completed prior to July 1, 2024, from $1,623.270 in projected revenue from May 12, 2025 through December 31, 2025, plus $997,180.00 in projected

3

revenue in 2026." (*Id.* ¶ 29). Plaintiff ultimately resigned from Hyatt, and her last day of employment was September 5, 2025. (*Id.* ¶ 30). To date, Hyatt has not paid Plaintiff any commissions for any sales that she booked prior to July 1, 2024, that either actualized after December 31, 2024, or that will actualize at some point in the future. (*Id.* ¶¶ 25–26).

Based on those allegations, Plaintiff filed a Complaint in the Superior Court of New Jersey asserting claims for violation of the NJWPL and breach of contract. (D.E. No. 1 at 7–14 (ECF Pagination)). Defendants removed the case to this Court on September 5, 2025, arguing that subject matter jurisdiction was appropriate pursuant to 28 U.S.C. § 1332. (*See generally* D.E. No. 1). Plaintiff filed the Amended Complaint on October 16, 2025. (Am. Compl.). Defendants moved to dismiss that pleading October 30, 2025, and their motion is now fully briefed and ripe for resolution. (Mov. Br.; D.E. No. 16 ("Opp. Br."); D.E. No. 17 ("Reply Br.")).

## II.    LEGAL STANDARD

Under Rule 12(b)(6), the Court may dismiss a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir.

4

2012)).  The burden is on the moving party to show that the plaintiff has not stated a facially plausible cause of action.  *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

In evaluating a plaintiff's claims, the Court considers the allegations in the complaint, as well as the documents attached to and specifically relied upon or incorporated therein.  *See Sentinel Tr. Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("'[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.'" (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (internal quotation marks omitted))).  The Court may also consider "matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that, pursuant to Rule 12(b)(6), the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004))).

### III.    DISCUSSION

In seeking dismissal, Defendants argue:  (i) Plaintiff's claims fail because she has not established a contractual entitlement to commissions, (Mov. Br. at 8–11); (ii) Plaintiff has failed to state a claim for recovery of "projected" earnings, (*id.* at 11–14); and (iii) Plaintiff accepted the alteration of any previous commission plan by continuing to work for Hyatt, (*id.* at 14–16).  The Court will address these points in turn.

## A.    The Terms of the Offer Letter

The Court first examines Defendants' contention that Plaintiff has failed to plead facts establishing a plausible entitlement to a 2% commission on sales she booked on their behalf. Defendants argue that, because she lacks a contractual basis for such commissions, her claims for breach of contract and violation of the NJWPL necessarily fail. (*Id.* at 8–11). The Court disagrees.

First, Defendants repeatedly suggest that the Offer Letter was not a contract at all. (Mov. Br. at 1 ("To the extent there is an agreement . . ."); *id.* at 8 ("The alleged 'agreement' is simply an offer letter."); *id.* at 10 ("There is no contract.")). "Under New Jersey law, 'the fundamental elements of contract formation are mutual assent, offer and acceptance, and consideration.'" *Stabile v. Macys, Inc.*, No. 24-2979, 2026 WL 611125, at *1 (3d Cir. Mar. 4, 2026) (quoting *Fazio v. Altice USA*, 337 A.3d 304, 311 (N.J. 2025)). Despite Defendants' contention to the contrary, the Court holds that the Offer Letter meets each of those requirements. Specifically, Defendant AMResorts made an express offer of employment, which Plaintiff accepted by signing as directed. The Offer Letter was supported by mutual consideration (Plaintiff's agreement to work for AMResorts and AMResorts promise to compensate her as represented), and reflected mutual assent, as it laid out the material terms of the parties' arrangement in significant detail. (*See generally* Offer Letter). Plaintiff has therefore alleged sufficient factual content for the Court to find the existence of a contract at the pleading phase. Whether and when that contract required Defendants to pay commissions to Plaintiff is a separate question.

Turning to the crux of Defendants' contractual argument—that the Offer Letter promised Plaintiff *nothing* in terms of commissions because it stated that she was merely "eligible" for commissions rather than "entitled" to them—Defendants have not made a compelling case. First, the decision that Defendants cite in support of their argument, *Beckwith v. Pa. State Univ.*, 672 F.

App'x 194 (3d Cir. 2016), is so factually inapposite that it provides no support for their position. In *Beckwith*, the defendant university hired the plaintiff as an associate professor. *Id.* at 195. In doing so, it sent her an offer letter that, among other things, "described her position as 'tenure-eligible,' with tenure being 'a six-year process,' although 'consideration for earlier tenure [was] possible based on [her] performance.'" *Id.* (brackets in original). The only factual similarity between the cases is that the plaintiffs in both matters received offer letters specifying that they were "eligible" for something: sales commissions in the instant case and placement on a tenure track in *Beckwith*. The receipt of commissions (dependent on individual, actualized sales) and academic tenure (a six-year process dependent on any number of unspecified variables) are not remotely similar. Nor does the Court agree with Defendant's interpretation of the Court of Appeals' holding in *Beckwith*. Summarizing that decision, Defendants represent that "*Beckwith* holds that being 'eligible' for something does not establish a contractual right to that thing." (Mov. Br. at 10). That is not accurate. The Court of Appeals did not discuss the import of the term "eligible" in the parties' agreement, let alone issue a holding interpreting it. *Beckwith*, 672 F. App'x at 197–98. Nor did the *Beckwith* court have to determine whether the offer letter entitled the plaintiff to tenure, as the Court must do here with regard to Plaintiff's commissions. Rather, the Court of Appeals determined, in relevant part, that nothing in the plaintiff's offer letter established that the defendant university agreed to employ her for specific term of years, and that the plaintiff therefore failed to overcome Pennsylvania's presumption of at-will employment. *Id.*

At best, Defendants have established that the commission language in the Offer Letter is ambiguous. Under New Jersey law, ambiguities in a contract "are to be strictly construed against the drafter[,]" *Atl. City Racing Ass'n v. Sonic Fin. Corp.*, 90 F. Supp. 2d 497, 506 (D.N.J. 2000) (citing *Karl's Sales and Service, Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 650 (N.J.

7

App.Div.1991)).   Thus, the Court must construe any potential ambiguity about Plaintiff's eligibility for a 2% sales commission against Defendants.

Similarly, courts use extrinsic evidence, including the parties' course of conduct, when evaluating ambiguous terms.  *See, e.g.*, *Int'l Paper Co. v. Rexam, Inc.*, No. 11-6494, 2013 WL 3043638, at *4 (D.N.J. June 17, 2013) (citing *Teamsters Indus. Employees Welfare Fund v. Rolls–Royce Motor Cars, Inc.*, 989 F.2d 132, 137 (3d Cir.1993)).  Here, "[f]or more than a decade, [AMResorts] paid [Plaintiff] a commission equal to 2% of the gross amount of *every* booking she made, with the commission payable to her after the program she booked actualized and the customer paid [AMResorts]." (Am. Compl. ¶ 12) (emphasis added).  Considering that AMResorts paid Plaintiff a 2% commission on *every* sale she made (once actualized) for *more than ten years*, the parties' course of conduct supports Plaintiff's interpretation of the Offer Letter.  Plaintiff has, therefore, pled sufficient factual content to establish a plausible entitlement to relief with regard to such commissions.

### B.    Projected Earnings

The Court next turns to Defendants' argument that Plaintiff has failed to state a claim under the NJWPL for "projected" commissions.  (Mov. Br. at 11–14).  Specifically, Defendants take issue with Paragraph 29 of Plaintiff's Amended Complaint, in which Plaintiff alleges that she "projects she has or will earn additional commissions totaling approximately $52,409 from booking she completed prior to July 1, 2024, from $1,623,270 in projected revenue from May 12, 2025 through December 31, 2025 plus $997,180.00 in projected revenue in 2026." (Am. Compl. ¶ 29).  Defendants argue that, to the extent those commissions had not become due and payable before Plaintiff left Hyatt's employ, they are not recoverable under the NJWPL. (Mov. Br. at 11–14).  This Court agrees.

8

While it does not appear that the New Jersey Supreme Court has addressed this issue, the Court finds the New Jersey Superior Court, Appellate Division's sound analysis in *Neal v. E. Controls, Inc.* persuasive. *See* No. A-4304-06T1, 2008 WL 706853, at *1 (N.J. Super. Ct. App. Div. Mar. 18, 2008). As in the present case, the plaintiff in *Neal* was an "at-will commissioned salesperson[.]" *Id.* at *1. A central issue in the case was the import of a unilateral "policy" statement that the defendant employer issued to its salesforce in 1989, providing that the company would not pay salespeople any commissions for sales that actualized *after* the end of the salesperson's employment. *Id.* Upon resigning in 2004, the plaintiff sought commissions for pending (i.e., not-yet-actualized) sales he made before departing. *Id.* at *2. The defendant company refused to make those payments and the plaintiff filed suit asserting claims for violation of the NJWPL, among other things. *Id.* The Appellate Division ultimately found that commissions that do not come due (e.g., those associated with orders for which a customer has not yet paid) prior to termination are not "wages" recoverable under the NJWPL. *Id.* at **5–8. In making that determination, the *Neal* court made two particularly noteworthy points.

First, the Court noted the Department of Labor regulation requiring an employer to make a final payment of wages to a separating employee "'within 10 days from the end of the work period for which such wages are earned[.]'" *Id.* at *5 (quoting N.J.A.C. 12:55-2.4(a)). Applying that requirement in the context of commissions, the Appellate Division wrote:

> Given the regulatory requirement to pay the employee his wages within ten working days of the last date of the applicable pay period, in this case, the last date of employment, it would appear that the entire legislative scheme simply does not apply to the payment of post-termination commissions. If the statute were interpreted to apply to post-termination commissions, the employer would arguably be required to make payment to the employee within ten days of his last date of employment. Since the consummation of the commission sale may never take place, or may take place weeks or months after the employee's last work period with the company, and

> may be ultimately subject to modifications or amendments, such a requirement would be both unfair and unworkable.

*Id.* at \*6.  In finding that the defendant did not violate that NJWPL by adopting a policy whereby it refused to pay post-termination commissions, the court found:  "Here . . . no statutory mandate was violated because the post-termination commissions were not wages due at the time plaintiff decided to voluntarily terminate his employment with [the defendant]."  *Id.*

Second, the Appellate Division juxtaposed the language of the NJWPL with that of the Sales Representatives Rights Act ("SRRA"), which the state legislature passed "some twenty-five years after enactment of the [NJ]WPL."  *Id.* at \*7.  "Because it only applies to a '[s]ales representative . . . other than an employee,'" the SRRA did not govern the parties' relationship. *Id.* (quoting N.J.S.A. 2A:61A-1(c)).  Nevertheless, the Appellate Division noted that the SRRA "explicitly requires the payment of post-termination commissions[.]" *Id.* (citing N.J.S.A. 2A:61A-2 (requiring that commissions be paid "within 30 days of the date the contract is terminated or within 30 days of the date commissions are due, whichever is later.")).  Explaining the significance of that provision, the *Neal* court wrote:

> Thus, by enacting the SRRA, the Legislature saw fit to insure that independent sales representatives not only received their commissions after the termination of their contractual relationship, but also that payment was made to them essentially in accordance with that prior agreement.  In doing so, the Legislature defined when a commission was due-whenever it was due under the parties' agreement-whether or not the contract was still in effect. This is obviously in sharp contrast with the WPL.
>
> **If the Legislature intended to accord the same statutory rights to an employee compensated on a commission basis, we assume it could have easily done so through modification of the express language of the WPL.**  The failure to do so, however, is entirely explainable because an employee, as opposed to an independent sales representative, generally continues to enjoy the benefits of employment right up until the date of termination. Medical benefits and vacation time, for example, continue to inure to the employee's

10

> benefit even while his commissions remain outstanding. Absent some independent contractual undertaking, however, the independent sales representative who is not employed by the company is only entitled to the commissions he has generated.

*Id.* at * 7 (emphasis added) (citations omitted). If post-termination commissions were covered by the NJWPL, the state legislature could have used that statute's existing language when it passed the SRRA. But the legislature chose not to do so, and instead drafted new language explicitly addressing such commissions. Neither did the legislature ever amend the NJWPL to include similar language. This reflects, as the Appellate Division noted, a conscious decision by the legislature.

As this Court agrees with the Appellate Division's determinations that (1) the NJWPL, as written, appears incompatible with the concept of treating post-termination commissions as statutorily recoverable "wages"; and (2) the state legislature could have, but did not, include language in the NJWPL specifying that post-termination commissions constitute "wages[,]" the Court finds that the Appellate Division's ultimate decision—that post-termination commissions are not "wages" recoverable under the NJWPL—is the correct one.[2]

Courts in this District have interpreted the NJWPL similarly. *See, e.g.*, *Soranno v. Heartland Payment Sys., LLC*, No. 18-16218, 2020 WL 5652469, at *12 (D.N.J. Sept. 23, 2020) (following *Neal* and finding: "The plain language of the statute makes clear that the [NJ]WPL is meant to protect only those wages which an employee earned *before* the termination of his employment . . . Plaintiff, therefore, cannot rely on the [NJ]WPL to recover unpaid post-

---

[2] Plaintiff disagrees with the Appellate Division's rationale in *Neal*, and also suggests that the New Jersey Supreme Court's subsequent decision in *Musker v. Suuchi, Inc.*, 331 A.3d 900 (N.J. 2025) alters the analysis. (Opp. Br. at 12). It does not. *Musker* did not address post-termination commissions at all. Rather, it analyzed whether commissions may be considered "supplementary incentives" rather than "wages" under the NJWPL. *Musker*, 331 A.3d at 901–08. The New Jersey Supreme Court found that "any commissions earned by employees for labor or services rendered" are wages under that statute. *Id.* at *908. The *Musker* court did not, however, address the separate issue of whether commissions are subject to the NJWPL if they do not become due and payable until *after* an employee departs. *See generally id.*

termination commissions allegedly 'earned' years after his resignation."). Most recently, one Judge in this District addressed the NJWPL's applicability to post-termination commissions in the context of a motion to dismiss, finding that, taken together, the Appellate Division's decision in *Neal* and the New Jersey Supreme Court's opinion in *Musker* "indicate that the dispositive issue is whether the commissions at issue were sufficiently earned prior to termination to qualify as 'wages due.'" *Wagner v. Gunton Corporation*, No. 25-11963, 2026 WL 969284, at *5 (D.N.J. Apr. 10, 2026). (citing N.J.S.A. § 34:11-4.3). The Court finds that to be an apt summary. In this context, the term "earned" means when the commission becomes due and payable to the employee, *not* when the employee does work that, if certain other things happen, might one day entitle the employee to a commission. Simply put, if a commission becomes due and payable before employment ends, that commission constitutes "wages" under the NJWPL. If, at the time of separation, the employee's entitlement to the commission remains contingent on other factors (e.g., a client's payment), it does not. This does not foreclose the possibility that such commissions might be recoverable pursuant to another cause of action. That is a separate issue.

Finally, the Court notes that, while the *Wagner* court ultimately declined to dismiss the plaintiff's NJWPL claims at the pleadings stage, that case involved markedly different circumstances. In *Wagner*, the movant sought dismissal of those claims, in their entirety, "because post-termination commissions are not recoverable under [that statute]." 2026 WL 969284, at *4. The *Wagner* court denied such relief after finding that the plaintiff's allegations, when viewed in the light most favorable to him, "plausibly support[ed] an inference that at least some of the commissions may have been earned prior to termination." *Id.* at *5; *see also id.* ("Thus, the Court cannot conclude, based solely on the pleadings and the materials properly considered at this stage, that the commissions at issue were unearned or categorically outside the scope of the NJWPL.").

The *Wagner* court further noted that "[t]he question whether Plaintiff's commissions were 'wages due' turns on factual issues concerning the nature of the compensation structure and the point at which commissions vested, which are not appropriately resolved on a motion to dismiss." *Id.* Here, however, the Court does not face the same limitation. Plaintiff has alleged that, under her agreement with Defendants, her commissions only became due when her sales were "actualized" (i.e., the client at issue paid Defendants). (Am. Compl. ¶ 12). This portion of Defendants' motion is limited to seeking dismissal of NJWPL claims based on sales that did not actualize—and, therefore, for which commissions did not become payable—until after Plaintiff resigned from Hyatt. Based purely on Plaintiff's allegations, taken as true, those commissions are not wages under the NJWPL. Thus, the limited dismissal Defendants seek is appropriate.

C.     **The Impact of Plaintiff's Continued Employment With Hyatt**

Finally, the Court examines Defendants' argument that, by remaining employed with Hyatt for approximately 15 months after receiving notice of the company's planned change to her compensation, Plaintiff is presumed to have accepted that change. (Mov. Br. at 14–16). That argument fails on multiple grounds.

Most fundamentally, this argument is a "red herring," as Plaintiff has alleged that Hyatt's proposed change to the compensation plan did not become effective until July 1, 2024. (Am. Compl. ¶ 19). Plaintiff does not, however, seek to recover any commission for sales she made on or after July 1, 2024. (*Id.* ¶¶ 23–29, 41 & 49). In suggesting that the change became effective earlier, Defendants focus their argument on Paragraph 17 of the Amended Complaint, in which Plaintiff alleged: "On or about May 7, 2024, Hyatt advised Ms. Lo Giudice that, although it would pay her commissions on bookings she made through June 30, 2024 if the customer paid Hyatt prior to December 31, 2024, it was not going to pay her any such commissions after December 31,

13

2024."  (Am. Compl. ¶ 17; *see* Mov. Br. at 14–15; Reply Br. at 10–11).  That argument, however, discounts Paragraphs 18 and 19 of the Amended Complaint, wherein Plaintiff alleges that Hyatt's Vice President of Sales conducted a Microsoft Teams call on June 11, 2024, during which she explained that "any groups booked on or before July 1, 2024[,] would be subject to the then current commission plan."  (Am. Compl. ¶¶ 18–19).

Defendants contend that Paragraph 19's invocation of the phrase "then current commission plan" refers to the new compensation terms Hyatt announced on May 7, 2024.  (Mov. Br. at 15–16).  While that is one possible interpretation of the language, it is not the only one.  Critically, that reading does not view Plaintiff's allegations "in the light most favorable to the [P]laintiff", which the Court must do in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  A more favorable reading of Paragraphs 18 and 19 would be that Hyatt conducted a Microsoft Teams meeting on June 11, 2024, to provide clarity concerning the May 7, 2024, announcement and, during that meeting, explained that no changes would go into effect until July 1, 2024.  Under that reading of the Amended Complaint, Defendants' argument fails.

To the extent Defendants argue that Plaintiff forfeited future commissions for sales she made *prior* to July 1, 2024, by continuing to work for Hyatt after that date, the Court notes that none of the cases they cite supports such a proposition.  *See Alexander v. Kay Finlay Jewelers, Inc.*, 506 A.2d 379 (N.J. App. Div. 1986) (addressing Plaintiff's contention that the defendant fired him in retaliation for bringing a civil suit, in violation of public policy); *Mita v. Chubb Computer Services, Inc.*, 767 A.2d 989 (N.J. App. Div. 2001) (analyzing whether an employee remained "at will");  *Meahan v. Michael Anthony Sign Design*, No. A-0336-12T1, 2013 WL 6817638, at *3 (N.J. Super. Ct. App. Div. Dec. 27, 2013) (examining, among other things, the propriety of altering

14

the designation of an employee's biweekly pay as a draw against future commissions as opposed to a "base salary").  Nor have Defendants cited any case law involving a situation where, as here, an employee, through counsel, explicitly rejected the proposed change as violative of the law and offered a counter-proposal.  (Am. Compl. ¶¶ 20–21).

Finally, Defendants have not adequately addressed Plaintiff's argument that the NJWPL prohibits such a forfeiture.  (Opp. Br. at 14–15 (citing N.J.S.A. 34:11-4.7)).  On its face, that statute would seem to nullify any agreement, implicit or otherwise, to waive wages related to previous sales.  *See* N.J.S.A. 34:11-4.6(b) (requiring employers to notify employees "of any changes in the pay rates or pay days prior to the time of such changes[.]"); *see also* N.J.S.A. 34:11-4.1(c) (including "direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a . . . commission basis" in the statutory definition of wages); N.J.S.A. 34:11-4.7 ("It shall be unlawful for any employer to enter into or make any agreement with any employee for the payment of wages of any such employee otherwise than as provided in this act . . . .  Every agreement made in violation of this section shall be deemed null and void[.]").  Defendants summarily dismiss Plaintiff's argument as "of no moment" based on their argument that "Plaintiff was only 'eligible' for commissions, not entitled" to them, (Reply Br. at 8–9), which this Court rejected in Section III(A), above.  In sum, the Court finds that Defendants have failed to carry their burden on this point.  *Davis*, 824 F.3d at 349 ("When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim.").

IV.    **CONCLUSION**

Based upon the foregoing, Defendants' Motion is **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's NJWPL claim is dismissed to the extent Plaintiff seeks relief regarding commissions that did not become due and payable prior to Plaintiff's departure from Hyatt.

15

Defendants' motion is otherwise denied.  An appropriate Order accompanies this Opinion.

Dated:  June 23, 2026

s/Esther Salas

**Esther Salas, U.S.D.J.**

16